Present:  Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and
          Keenan, JJ., and Whiting, Senior Justice

ANDRE L. GRAHAM,
A/K/A LUIS A. RIVAS

v.  Record No. 950948    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                      November 3, 1995
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      John F. Daffron, Jr., Judge


     In this appeal of a capital murder conviction, we consider

(1) whether the trial court erred in excluding a prospective

juror for cause, and (2) whether a defendant can be found guilty

of capital murder, under Code § 18.2-31(7), when he was the

"triggerman" in the premeditated killing of one person, but was

only an accomplice in the killing of the other person as part of

the same act or transaction.

     Among other charges, Andre L. Graham was convicted by a jury

of the capital murder of Rebecca W. Rosenbluth as part of the

same act or transaction as the killing of Richard A. Rosenbluth,

her husband.  Code § 18.2-31(7).  The jury fixed punishment for

this offense at life imprisonment and a fine of $100,000.  The

trial court sentenced Graham in accordance with the jury's

verdict.

     The evidence at trial showed that, on November 30, 1993,

Chesterfield County police discovered the bodies of Richard and

Rebecca Rosenbluth in their home.  Richard Rosenbluth had been

shot twice in the head, and Rebecca Rosenbluth had been shot

three times in the head and once in the neck.  All these gunshot

wounds were lethal.

Both of Mr. Rosenbluth's gunshot wounds and two of Mrs. Rosenbluth's wounds were inflicted by a handgun linked to Graham's co-defendant, Mark Sheppard.[*]  About one week prior to these murders, Sheppard had accidentally shot his friend, Benji Vaughn, using the same handgun.

Mrs. Rosenbluth's other two wounds were inflicted by a .45 caliber handgun, which the police found in the apartment of Priscilla Booker, Graham's girlfriend, immediately after Graham had telephoned Booker from the jail instructing her to "get rid of it."  Booker testified that Graham had obtained the handgun in September 1993.

Other circumstantial evidence linked Graham and Sheppard to the Rosenbluth murders.  They were both seen in possession of the Rosenbluths' vehicles.  Graham pawned several items of the Rosenbluths' jewelry, and the police found Mrs. Rosenbluth's comb and brush set in Priscilla Booker's apartment.

At the time of his arrest, Sheppard had in his possession Mrs. Rosenbluth's watch and one of Mr. Rosenbluth's company credit cards.  When the police searched Sheppard's place of residence, they discovered the Rosenbluths' stereo equipment, a piece of their luggage, and the license plates to one of their

---

[*]Sheppard's convictions arising from these events are reviewed by this Court in Sheppard v. Commonwealth, 250 Va. ___, ___ S.E.2d ___ (1995), decided today.

vehicles. In addition, Sheppard's fingerprint was identified on a package of razor blades found in the Rosenbluths' home.

The evidence also showed that Graham and Sheppard were involved in the business of selling cocaine, and Graham admitted to the police that he had made several sales of cocaine to Mr. Rosenbluth. On occasion, Mr. Rosenbluth used credit cards to obtain hotel rooms for Graham and received cocaine from him in exchange. Graham told Priscilla Booker that Mr. Rosenbluth owed him money.

The Rosenbluths both had ingested cocaine shortly before they died. Traces of cocaine were found in their kitchen and den. Based on the above evidence, the prosecution argued that Graham and Sheppard killed the Rosenbluths and stole their property to "settle" existing drug debts.

On appeal, Graham first argues that the trial court erred in granting the Commonwealth's motion to exclude prospective juror James Summers for cause. He contends that the record shows that Summers did not have a fixed view against imposition of the death penalty. Graham asserts that, in striking a juror who had only "a general hesitancy" about his ability to consider the death penalty, the trial court caused "the prejudicial effect of impaneling a jury more prone to impose the death penalty."

In response, the Commonwealth argues that this claim is moot because the jury did not impose the death penalty, but fixed Graham's punishment at life imprisonment. We agree with the

Commonwealth.

In Witherspoon v. Illinois, 391 U.S. 510 (1968), the Supreme Court held that a sentence of death cannot be upheld if the jury that imposed or recommended the sentence was chosen by excluding members of the venire solely because they expressed general objections to capital punishment. See id. at 522. The rationale underlying this rule is that any such exclusions of potential jurors results in a jury that is "death prone." See id. at 520-21. However, prospective jurors may be excused for cause if they state that they could never vote to impose the death penalty, or that they would refuse even to consider its imposition in the case before the court. Id. at 522 n.21; Morgan v. Illinois, 504 U.S. 719, 728 (1992).

This Witherspoon inquiry is relevant, however, only when a sentence of death has been imposed. As this Court explained in Lewis v. Commonwealth, 218 Va. 31, 35, 235 S.E.2d 320, 323 (1977), "a Witherspoon error affects only the sentence of death and not the conviction for which the penalty is imposed." See also Bumper v. North Carolina, 391 U.S. 543, 545 (1968). Thus, the Witherspoon error alleged here, that the trial court erred in excluding prospective juror Summers for cause because he expressed a "general hesitancy" about his ability to consider the death penalty, is rendered moot by Graham's sentence of life imprisonment.

We next consider Graham's argument that the trial court

erred in instructing the jury that it could find him guilty of capital murder if it found that he was the immediate perpetrator with respect to one killing, but only an accomplice in the other killing. Graham asserts that the Commonwealth was required to prove that he was the immediate perpetrator, the triggerman, in both killings. In support of this argument, Graham relies on Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986), in which this Court held that, except in the case of murder for hire, only the immediate perpetrator of a homicide may be convicted of capital murder. We disagree with the conclusion advanced by Graham.

We first note that Graham does not dispute that the evidence is sufficient to establish he was an accomplice in the murder of Richard Rosenbluth. Instead, Graham bases his argument on the fact there is no evidence that he was the triggerman in that murder.

In Fitzgerald v. Commonwealth, 223 Va. 615, 292 S.E.2d 798 (1982), cert. denied, 459 U.S. 1228 (1983), this Court explained that

> Code § 18.2-31, defining capital murder, was first enacted by the General Assembly in 1975 as part of a statutory scheme enacted to eliminate the "unbridled choice between the death penalty and a lesser sentence" prohibited by Furman v. Georgia, 408 U.S. 238 (1972).
>
> . . . .
>
> Subsequent amendments to the murder statutes, including those enacted in response to Furman in 1975, have changed the substance and the procedure of the statutes, but not their evident purpose. That purpose is gradation. The General Assembly grades murder in

- 5 -

order to assign punishment consistent with prevailing societal and legal views of what is appropriate and procedurally fair.

Id. at 635-36, 292 S.E.2d at 810.

The language of Code § 18.2-31(7) evidences a legislative determination that the described offense is qualitatively more egregious than an isolated act of premeditated murder.  This result is accomplished by the addition of a gradation crime to the single act of premeditated murder.  Under this subsection, the gradation crime is the defendant's killing of more than one person as part of the same act or transaction.

Although this Court has not addressed the precise issue that Graham raises, we have examined a related issue under Code § 18.2-31(4) and (5), in which the gradation crimes were robbery and rape.  In James Dyral Briley v. Commonwealth, 221 Va. 563, 273 S.E.2d 57 (1980), the defendant argued that, to be convicted of capital murder during the commission of a robbery or a rape, the prosecution was required to prove that he was a principal in the first degree to the gradation crimes.  We disagreed, holding that

> [Code] § 18.2-31 does not require proof that a defendant charged with murder during the commission of a robbery or a rape was a principal in the first degree to the crimes of robbery or rape.  It is only necessary that the Commonwealth prove that the defendant was the triggerman in the murder and an accomplice in the robbery or rape to convict him of capital murder.

Id. at 573, 273 S.E.2d at 63; see also Watkins v. Commonwealth, 229 Va. 469, 485-86, 331 S.E.2d 422, 434-35 (1985), cert. denied,

475 U.S. 1099 (1986).

We conclude that this holding is dispositive of the issue before us, and that Code § 18.2-31(7) does not require proof that a defendant charged with capital murder, in the premeditated killing of more than one person as part of the same act or transaction, was the triggerman in each murder referenced in the indictment. Rather, this section requires proof only that the defendant was the triggerman in the principal murder charged, and that he was at least an accomplice in the murder of an additional person or persons as part of the same act or transaction.

As stated above, Graham does not dispute that the evidence is sufficient to establish he was an accomplice in the murder of Richard Rosenbluth. Further, he does not dispute that the evidence is sufficient to establish that he was the triggerman in the willful, deliberate, and premeditated killing of Rebecca Rosenbluth. Therefore, we conclude that the trial court did not err in its instructions to the jury on the offense charged under Code § 18.2-31(7).

For these reasons, we will affirm the trial court's judgment.

<u>Affirmed</u>.