Present:  All the Justices

BENJAMIN LEE LILLY

OPINION BY
v.  Record Nos. 972385, 972386  JUSTICE LAWRENCE L. KOONTZ, JR.
November 5, 1999
COMMONWEALTH OF VIRGINIA


ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Pursuant to a jury trial held in the Circuit Court of Montgomery County in 1996, Benjamin Lee Lilly (Lilly) was convicted and sentenced to death for the willful, deliberate, and premeditated killing of Alexander V. DeFilippis in the commission of robbery in violation of Code § 18.2-31(4).  In Lilly v. Commonwealth, 255 Va. 558, 499 S.E.2d 522 (1998), we affirmed the trial court's judgment and the death sentence.[*]  Thereafter, Lilly successfully petitioned the Supreme Court of the United States for a writ of certiorari.  The Supreme Court

_____

[*]We also affirmed Lilly's conviction for the abduction and robbery of DeFilippis, Code §§ 18.2-47 and 18.2-58, the carjacking of DeFilippis' vehicle, Code § 18.2-58.1, the use of a firearm in the principal offenses and the possession of a firearm after having previously been convicted of a felony, Code §§ 18.2-53.1 and 18.2-308.2(A)(i).  On brief and during oral argument, Lilly's counsel conceded that the untainted evidence was sufficient to sustain Lilly's convictions for these offenses.  Indeed, Lilly stresses on brief that "[t]he sole issue on this remand is whether the unconstitutional admission of Mark Lilly's statements was harmless beyond a reasonable doubt on the question of whether Ben Lilly . . . was the triggerman."  Accordingly, our prior decision affirming these convictions and the sentences imposed thereon remains undisturbed with the exception of the firearm charge related to the capital murder offense.

reversed a portion of our judgment, holding that the admission into evidence at Lilly's trial of two confessions made by Lilly's brother Mark Lilly (Mark), who refused to testify, violated Lilly's Sixth Amendment right to be confronted with the witnesses against him. Lilly v. Virginia, 527 U.S. ___, 119 S.Ct. 1887 (1999). The Supreme Court remanded the case with directions to this Court to determine whether this error was harmless beyond a reasonable doubt. Having now considered the briefs and oral argument of Lilly and the Commonwealth and again reviewing the trial record, we address the issue of harmless error in this case.

The standard that guides our analysis of the harmless error issue in this case is clear. Thus, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;" otherwise the conviction under review must be set aside. Chapman v. California, 386 U.S. 18, 24 (1967). This standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id. at 23. In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting

the tainted evidence on material points, and the overall strength of the prosecution's case.  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); see also Harrington v. California, 395 U.S. 250, 254 (1969); Schneble v. Florida, 405 U.S. 427, 432 (1972)(erroneously admitted evidence harmless where it was merely cumulative of other overwhelming evidence of guilt).

We have recited the evidence in the record in our prior decision and we need not repeat it here.  Rather, we will focus on the facts that are pertinent to our resolution of the present issue.  In that regard, we initially note that in order to convict Lilly of capital murder and to subject him to a death sentence for the murder of DeFilippis, the Commonwealth had the burden to prove beyond a reasonable doubt that Lilly was the actual perpetrator of the crime or the "triggerman" in the murder.  Graham v. Commonwealth, 250 Va. 487, 492, 464 S.E.2d 128, 130, cert. denied, 516 U.S. 997 (1995); Johnson v. Commonwealth, 220 Va. 146, 155-56, 255 S.E.2d 525, 530 (1979), cert. denied, 454 U.S. 920 (1981).

Contrary to the Commonwealth's assertions, the evidence of Lilly's guilt as the actual perpetrator, or the triggerman, in the murder of DeFilippis was not "simply overwhelming."  There was no physical evidence such as fingerprints on the murder weapon or human blood evidence to link Lilly to the killing. Indeed, the murder weapon was not found in the possession of

3

Lilly after the murder and there was evidence that prior to the murder the weapon was at various times in the possession of Lilly, his brother Mark, and the other co-defendant, Gary Wayne Barker. In addition, Lilly's remark to Police Chief Whitsett after Lilly was detained to the effect that Lilly "looked like a murderer" in no way amounts to an actual confession to <u>capital</u> murder as contended by the Commonwealth. That remark, even viewed in the light most favorable to the Commonwealth, does no more than implicate Lilly as a participant in the murder of DeFilippis and, thus, is indicative of his guilt of first degree murder only. See <u>Harrison v. Commonwealth</u>, 220 Va. 188, 191, 257 S.E.2d 777, 779 (1979). It does not establish that he was the triggerman.

There is no dispute that following the abduction of DeFilippis, there came a time when only Lilly, Mark, Barker, and DeFilippis were at the murder scene. It is self-evident that the account of what happened there was crucial to the determination by the jury of which of the co-defendants inflicted the fatal gunshot wounds upon DeFilippis. Lilly did not confess and did not testify. Accordingly, as the Commonwealth concedes on brief, "Barker's eyewitness testimony unquestionably was the centerpiece of, or . . . the 'key to' the Commonwealth's case." Barker testified that Lilly fatally shot

4

DeFilippis three times in the head. Mark's statements also identified Lilly as the triggerman.

The Commonwealth asserts that this Court should be confident that the admission of Mark's statements was harmless beyond a reasonable doubt. In support of that assertion it argues that Barker's testimony was corroborated by other evidence, independent of Mark's statements, on every material point. We disagree. While it is true that much of Barker's testimony was corroborated by other evidence, that evidence related to the various criminal acts committed by Lilly, Mark, and Barker leading up to and surrounding the murder of DeFilippis. The fallacy of the Commonwealth's argument is that this other evidence upon which it relies did not relate to or corroborate Barker's testimony on the critical issue whether Lilly, as opposed to Mark or Barker, was the triggerman in the murder. Only Mark's statements implicating Lilly as the triggerman corroborated Barker's testimony on that issue. Thus, on that critical issue, the Commonwealth's evidence was not overwhelming.

Clearly, where the principal direct evidence against the accused is the testimony of an accomplice, the credibility of that witness will be a significant factor in the jury's determination of the accused's level of culpability. We have consistently held that this credibility determination rests with

5

the jury and is not subject to challenge on appeal merely because the testimony is self-serving, results from a favorable plea arrangement, or because the witness is himself a felon. See Joseph v. Commonwealth, 249 Va. 78, 86, 452 S.E.2d 862, 867-68, cert. denied, 516 U.S. 876 (1995).  However, here the issue is not the credibility of the witness, but rather the potential for harm caused by the erroneous admission of evidence which tends to support the jury's credibility determination.  In that context we must presume that such evidence had the potential to influence the jury into accepting the properly admitted evidence as more credible and, thus, to taint the jury's determination of the facts.

This is precisely the circumstance with which we are faced in considering the harm of the erroneous admission of Mark's statements implicating Lilly as the triggerman.  In the absence of these statements, Barker's testimony that Lilly was the triggerman was supported only by the evidence that Lilly was present and had the opportunity to shoot DeFilippis.  It is therefore inconceivable that the jury would not have weighed Barker's credibility in light of the concurring evidence of Mark's statements.  Moreover, those statements, coming as they did, from Lilly's brother undoubtedly carried weight with the jury.  Thus, there is a reasonable possibility that those statements contributed to Lilly's conviction for capital murder.

6

Accordingly, we cannot say that the error in admitting Mark's statements was harmless beyond a reasonable doubt.

For these reasons, we will affirm Lilly's conviction for the carjacking, robbery, abduction, and the four related firearm charges, reverse Lilly's conviction for capital murder and the related firearm charge, and remand the case for a new trial consistent with the views expressed herein and in the opinion of the United States Supreme Court, if the Commonwealth be so advised.

Record No. 972385 — <u>Reversed and remanded.</u>
Record No. 972386 — <u>Affirmed in part</u>, <u>reversed in part</u>, <u>and remanded.</u>

JUSTICE KINSER, with whom JUSTICE COMPTON joins, dissenting.

As the majority correctly notes, affirmation of the defendant's convictions requires a belief beyond a reasonable doubt that the error was harmless. <u>Chapman v. Commonwealth</u>, 386 U.S. 18, 24 (1967). Because I believe beyond a reasonable doubt that the admission into evidence of Mark Lilly's out-of-court statements, while error, was harmless in that it did not unfairly "'contribute to the [jury's] verdict,'" <u>Yates v. Evatt</u>, 500 U.S. 391, 403 (1991) (quoting <u>Chapman</u>, 386 U.S. at 24), I would affirm the defendant's convictions for capital murder and use of a firearm in the commission of capital murder.

7

I reach this result because the defendant has conceded that the admission into evidence of the challenged statements was harmless error in the several related convictions, a concession fully supported by the record.  Thus, his claim that admission of the statements was not harmless as to the two convictions at issue here simply does not ring true.  On brief, the defendant specifically stated that he "does not challenge that the admission of Mark Lilly's statements was harmless error on [the defendant's] convictions for robbery, abduction, carjacking, possession of a firearm[, and] illegal use of a firearm (except with respect to the use of a firearm to kill Alexander DeFilippis)."[2]  The defendant asserts that the admission of his brother's statements into evidence was not harmless error only with regard to his convictions for capital murder and use of a firearm in the commission of that murder.  He characterizes the sole issue on remand as "whether the unconstitutional admission of Mark Lilly's statements was harmless beyond a reasonable doubt on the question of whether Ben Lilly . . . was the triggerman."

The defendant's position that the admission of Mark's statements was not harmless error as to the "triggerman" issue is predicated upon the defendant's contention, which the

_____

[2] At oral argument, he also conceded that he was guilty of murder.

majority accepts, that the statements improperly influenced the jury, since they corroborated the testimony of Gary Wayne Barker, and thus may have caused the jury to find that Barker was more credible than it otherwise might have found. The defendant contends that this Court should reverse his convictions for capital murder and the related firearms charge because "the Commonwealth is left with only with [sic] the testimony of Gary Barker that Ben Lilly was the triggerman," and that "[s]uch evidence is insufficient to make the admission of Mark Lilly's statements harmless beyond a reasonable doubt."

However, the defendant fails to acknowledge that the only evidence supporting the elements of the offenses of carjacking, abduction, and the use of a firearm in the commission of those crimes is also the testimony of Barker, coupled with the erroneously admitted statements of Mark.[3] In other words, those

---

[3] For example, the only evidence establishing that the defendant committed the crime of carjacking was the testimony of Barker, along with Mark's statements. There were no other eyewitnesses to the carjacking, nor any forensic evidence linking the defendant to that crime. DeFilippis' roommate testified that DeFilippis and his car disappeared near the location where defendant's car was abandoned. However, that testimony was insufficient to prove that defendant was guilty of carjacking. The same analysis also applies to the charge of abduction.

With regard to the charge for the robbery of DeFilippis, Barker's testimony is the sole evidence linking the defendant to that crime. Mark's only comment that could be construed as being related to that robbery was that DeFillipis took his shirt and shoes off when DeFilippis and the defendant, who had a pistol, were alone outside the car. However, Mark stated that

9

charges stand in the same evidentiary posture as the
"triggerman" issue.  If Barker's testimony was sufficient to
convict the defendant of the numerous offenses for which he was
sentenced to life imprisonment, and the credibility of his
testimony as to those offenses was not improperly supported by
the admission of Mark's statements, as the defendant concedes, I
see no reason why the same is not true with regard to his
convictions for capital murder and the related firearms charge.

I recognize that the defendant could have been found guilty
of these other crimes as a principal in the second degree,
rather than as the actual perpetrator, and that he could have
been found guilty of the capital murder of DeFillipis only if he
were the "triggerman."  However, that distinction does not
change the fact that the only evidence supporting the
defendant's convictions for abduction, carjacking, capital
murder, and use of a firearm in committing those offenses is the
same.  Thus, if the admission into evidence of Mark's out-of-
court statements is harmless error as to any of the defendant's

he could not hear anything that was being said by either man.
Thus, I will not include the robbery conviction in my discussion
with regard to the import of the defendant's concession that the
admission of Mark's statements into evidence was harmless error
with regard to all his convictions except those for capital
murder and the use of a firearm in the commission of such
murder.  However, the defendant's acknowledgement that his
robbery conviction was proper demonstrates that Barker's
uncorroborated testimony was sufficient to convict the defendant
of that charge.

convictions, it must be harmless error as to all of his convictions.

I also believe that the majority focuses too narrowly on whether the admission of Mark's statements might have affected the jury's credibility determination, and thus contributed to the conviction, without looking at the credibility issue in light of the whole record. See Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) ("an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt"). The defendant's statement to Pearisburg Police Chief Whitsett shortly after being apprehended in Giles County[4] that the defendant "looked like a murderer" lends credence to Barker's testimony that the defendant was the "triggerman." While the majority contends that this statement establishes only guilt of first degree murder,[5] the statement, viewed in the light most favorable to the Commonwealth, Horton v. Commonwealth, 255 Va. 606, 608, 499 S.E.2d 258, 259 (1998), suggests that the defendant believed he looked like a murderer

---

[4] The defendant, Mark and Barker were arrested in Giles County and charged with two robberies that occurred there after the murder of DeFilippis.

[5] Harrison v. Commonwealth, 220 Va. 188, 191, 257 S.E.2d 777, 779 (1979), the case cited by the majority, does not support the majority's position, but stands solely for the

11

because he had pulled the trigger of the gun.  Indeed, I believe that a defendant who confesses to murder does not necessarily make, understand or draw the distinctions between capital, first degree and other types of murder that the law recognizes.  Thus, the defendant's statement could properly be considered by the jury as an admission of guilt to being the "triggerman" in the murder of DeFilippis.  Likewise, the defendant's statement after being apprehended that Mark was not "the one that's really done anything wrong" is probative of the defendant's guilt.

In addition to these statements, the defendant's confession, which was introduced into evidence at his trial, contained a number of false or inconsistent statements.  For example, he stated that four people were involved in the Giles County robberies, and he gave inconsistent information regarding what time he joined Mark and Barker on the evening of the murder of DeFilippis.  Notably, the defendant did not mention any of the crimes or events involving DeFilippis.  False statements by a defendant may be probative of guilt.  Sheppard v. Commonwealth, 250 Va. 379, 389, 464 S.E.2d 131, 137 (1995), cert. denied, 517 U.S. 1110 (1996); Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).

---

established proposition that only the "triggerman" may be convicted of capital murder.

Finally, I conclude that the majority failed to determine whether, even if "the damaging potential of the cross-examination were fully realized," the jury's verdict would still have been the same. Van Arsdall, 475 U.S. at 684. In my opinion, cross-examination of Mark in this case would not have adversely affected the credibility of Barker. Defense counsel called Mark during the sentencing phase of the defendant's trial. There, Mark was a wholly unconvincing witness. In his haste to attempt to retract his out-of-court statements implicating his brother, he went so far as to attempt to retract his claim that the defendant robbed DeFilippis. However, nothing in Mark's prior statements had directly implicated the defendant in the commission of that crime. The fact that the jury sentenced the defendant to death after hearing Mark's retraction lends further support to my conclusion that the "'minds of an average jury' would not have found the [Commonwealth's] case significantly less persuasive" had Mark's statements been excluded. Schneble v. Florida, 405 U.S. 427, 432 (1972)(quoting Harrington v. California, 395 U.S. 250, 254 (1969)).

Thus, I am convinced that the admission into evidence of Mark's out-of-court statements did not unfairly "'contribute to the [jury's] verdict'" convicting the defendant of capital murder and use of a firearm in committing that murder. Yates,

13

500 U.S. at 403, (quoting <u>Chapman</u>, 386 U.S. at 24).  For these reasons, I respectfully dissent.