COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


MELVIN DOUGLAS SMITH, JR.
                                            OPINION BY
v.    Record No. 0127-00-2        JUDGE ROSEMARIE ANNUNZIATA
                                           MARCH 6, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Robert W. Duling, Judge

           Christopher J. Collins for appellant.

           Kathleen B. Martin, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     The appellant, Melvin Douglas Smith, Jr., was tried on four

counts of murder and four counts of use of a firearm in the

commission of murder.  On September 24, 1999, a jury in the

Circuit Court of the City of Richmond found appellant guilty of

first degree murder of only one of the victims, Kenneth "Randy"

Smith, and of use of a firearm in the commission of that murder.

The jury sentenced appellant to prison terms of fifty-five years

for the murder and five years for the firearm offense.  The

trial court suspended seven years of the murder sentence on

December 15, 1999.  The jury found appellant not guilty of two

_____

     [*] Judge Coleman participated in the hearing and decision of
this case prior to the effective date of his retirement on
December 31, 2000 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401.

of the four murders and associated firearm charges, and deadlocked on the remaining murder and associated firearm charge. Therefore, the court declared a mistrial as to those final two charges.

Before trial, appellant filed a motion to sever the four murder charges under Rule 3A:10(c), which the trial court denied. Appellant contends the court erroneously denied his motion for separate trials. For the following reasons, we reverse the convictions for the murder of Kenneth "Randy" Smith and the related firearm charge and remand for a new trial on those two counts if the Commonwealth be so disposed.

The Commonwealth charged appellant with first degree murder under Code § 18.2-32 for the killing of Bruce Ross (Murder #1), capital murder under Code § 18.2-31(7) for the killing of Irvin Doughty (Murder #2) in the same transaction as the killing of Ross, first degree murder of Randy Smith (Murder #3), and capital murder under Code § 18.2-31(8) for the killing of Warrick Ray (Murder #4) within three years of the killing of Ross and/or Doughty and/or Smith. The Commonwealth also charged appellant with four counts of use of a firearm in the commission of murder. The jury found appellant not guilty of Murders #1 and 2, guilty of Murder #3, and deadlocked with respect to Murder #4.

A trial court has limited discretion to combine offenses for trial. Godwin v. Commonwealth, 6 Va. App. 118, 121, 367

S.E.2d 520, 521 (1988).  However, a trial court's ruling on the issue will not be reversed absent a showing that the court abused its discretion.  Cheng v. Commonwealth, 240 Va. 26, 33-34, 393 S.E.2d 599, 603 (1990).  Under Rule 3A:10(c), a court may join separate charges for trial only if two criteria are met:  (1) justice does not require separate trials; and (2) either (a) the requirements of Rule 3A:6(b) are met; or (b) the defendant and the Commonwealth's attorney consent.  Under Rule 3A:6(b), the offenses must be either:  (1) part of the same act or transaction; or (2) two or more acts or transactions which are connected; or (3) the offenses must be part of a common plan or scheme.

The facts as presented in the record before us, viewed in the light most favorable to the Commonwealth, are as follows. Timothy Frazier testified that on November 20, 1994, he and appellant went to the Mar-Ket on Grayland Avenue in Richmond intending to kill Tyrone Reed.  The attempt to kill Reed was in retaliation for the earlier killing of appellant's friend, Michael Atkins.  Both Frazier and appellant were armed and began firing when they reached the market.  Bruce Ross (Murder #1) and Irvin Doughty (Murder #2), who were bystanders at the scene, were killed in the barrage of gunfire.

On March 23, 1995, four months after appellant committed Murders #1 and 2, he shot and killed Randy Smith (Murder #3) and told Frazier that he had done so because he believed that Randy

had been hired to kill him. However, the Commonwealth introduced no evidence as to why Randy Smith had been hired to kill appellant or who had hired him. Appellant claimed he shot Randy Smith in self-defense. Appellant testified that Kenneth Daniels pulled a gun on appellant and threatened to kill him because he had testified against Daniels' brother in the Michael Atkins murder trial. According to appellant's testimony, when Randy Smith reached for Daniels' gun to shoot appellant, appellant shot Randy Smith in self-defense.

On August 19, 1996, over a year after appellant committed Murder #3, he shot Warrick Ray (Murder #4) in a rooming house in Richmond. Appellant told Frazier about this killing as well. According to Frazier, appellant killed Ray because Ray knew where appellant lived. Kevin Roane, who witnessed the murder, testified that appellant shot Ray because Ray had gone to appellant's grandmother's house. The record contains no further evidence of a motive for this killing.

The four murders in this case do not meet the "same act or transaction" requirement because they involved three separate acts which occurred at three different times and places. Godwin, 6 Va. App. at 122, 367 S.E.2d at 522.

Additionally, because the four murders occurred "on different days, at different places and no evidence link[s] or connects[s]" the murders, the offenses were not "connected." Id. at 122, 367 S.E.2d at 522; see also Spence v. Commonwealth,

12 Va. App. 1040, 1044, 407 S.E.2d 916, 918 (1991) ("To meet the 'connected' test, the crimes should be 'so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety.'" (citation omitted)); Cook v. Commonwealth, 7 Va. App. 225, 229, 372 S.E.2d 780, 782 (1988) (two or more acts or transactions are "connected" where the offenses are "connected by time, place, method and perpetrators").

The Commonwealth contends the four murders were part of a "common scheme or plan" emanating from a "continuing feud between rival groups who were competing to distribute illegal drugs in the Richmond area."  The record does not support the Commonwealth's contention.

Offenses will be deemed to be part of a common scheme or plan when the "'relationship among [the] offenses . . . is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not attainable by the commission of any of the individual offenses.'"  Godwin, 6 Va. App. at 122, 367 S.E.2d at 522 (citation omitted); see also Purvis v. Commonwealth, 31 Va. App. 298, 306, 522 S.E.2d 898, 902 (2000) ("A conspiracy involving more than one offense is a typical example of offenses involving a common plan."); Spence, 12 Va. App. at 1044, 407 S.E.2d at 918.  In addition, "offenses using a 'common plan' . . . should be 'distinguished from

similar character offenses (where the offenses merely duplicate each other).'"  Godwin, 6 Va. App. at 122-23, 367 S.E.2d at 522 (citation omitted); see also Purvis, 31 Va. App. at 307, 522 S.E.2d at 902; Foster v. Commonwealth, 6 Va. App. 313, 322, 369 S.E.2d 688, 694 (1988) (where there had been a three-year hiatus between the offenses, "no action was taken to establish a common scheme or plan").

The record contains no evidence that appellant was involved in the drug trade or that the motive for any of the four murders was related to the drug trade.  The record likewise contains no evidence proving that appellant or any of his victims were members of a gang or that the murders were gang-related.  The only testimony pertaining to a gang-related conflict was provided by Timothy Frazier, who participated in the Ross and Doughty murders (Murders #1 and 2) with appellant.  Frazier admitted there was a "general beef" between the Top and Bottom gangs, which involved "a lot of shoot-outs."  Frazier testified that the conflict began with the robbery of Jevon Clayton by Frazier, Kurt Holmes, and William Atkins.  Following the robbery, "[t]hey came down and shot the block up."  Frazier admitted that his friend, Kurt Holmes, had been shot by Harry George, "Bubba," and "J.B." and that Frazier "[s]hot some people from their crew" in retaliation.  Frazier's testimony does not establish, however, appellant's alleged association with either gang, nor did his testimony link any of the four murders to gang

activity.  To infer that appellant was part of a gang because Frazier may have belonged to one of the two gangs, and because Frazier and appellant committed the Ross and Doughty murders together, is unreasonable and insufficient to support a conclusion that appellant committed the four murders as part of a common scheme or plan.  Therefore, the evidence does not support the Commonwealth's allegation that the four murders were part of a common plan or scheme and were, for that reason, properly tried together.

The Commonwealth also argues that because the capital charge for Murder #4 under Code § 18.2-31(8)[1] required proof of one of the three other murders, all four murders were properly joined.  However, the Commonwealth cites no authority for supplanting the joinder test under Rule 3A:10(c) when the Commonwealth seeks to try a defendant not only for capital murder under Code § 18.2-31(8), but for the predicate murders as well.  To try the offenses jointly, each offense must satisfy the requirements of Rule 3A:6.  Accordingly, we find the trial court abused its discretion in ordering that all of the murder offenses be tried together.[2]

---

[1] Code § 18.2-31(8) designates as capital murder, "[t]he willful, deliberate, and premeditated killing of more than one person within a three-year period."

[2] As the requirements of Rule 3A:6(b) were not met, we need not consider whether justice required separate trials.

Although we find the court abused its discretion in ordering that the four murders be tried together, we will not reverse appellant's convictions unless the error affected a substantive right. Rule 3A:2(a); Foster, 6 Va. App. at 323, 369 S.E.2d at 694; Burley v. Commonwealth, 29 Va. App. 140, 149, 510 S.E.2d 265, 269-70 (1999) ("The harmless error doctrine 'enables an appellate court . . . to ignore the effect of an erroneous ruling when an error clearly has had no impact upon the verdict or sentence in a case.'" (citation omitted)). "An error [in joining charges] is harmless when a 'reviewing court, can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.'" Id. at 149, 510 S.E.2d at 270 (citation omitted); see also Purvis, 31 Va. App. at 308, 522 S.E.2d at 902.

The error is harmless where "the evidence related to each of the counts would have been admissible in a separate trial of any of the other counts." Foster, 6 Va. App. at 323, 369 S.E.2d at 694; see also Purvis, 31 Va. App. at 307, 522 S.E.2d at 903. "Conversely, such error may not be harmless if evidence related to each of the counts would have been inadmissible in a separate trial of any of the other counts." Id. at 308, 522 S.E.2d at 903. Generally, in a criminal prosecution, evidence that the accused is guilty of other crimes is "inadmissible for the purpose of showing the commission of the particular crime charged." Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176

S.E.2d 802, 805 (1970); see also Cooper v. Commonwealth, 31 Va. App. 643, 647, 525 S.E.2d 72, 74 (2000) (en banc). However, the Supreme Court has defined certain exceptions to this rule:

> Evidence of other offenses is [admissible] if it shows the conduct and feelings of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part.

Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805. However, even if the evidence of other crimes is relevant to the charged offense, "such evidence is only admissible if its probative value outweighs its prejudicial nature." Foster, 6 Va. App. at 323, 369 S.E.2d at 694.

The Commonwealth alleged that evidence pertaining to each of the murders would have been admissible in a separate trial of each of the murders because "evidence regarding the four murders tended to show they were perpetrated by Smith as part of a general scheme of grudge killings between rival groups." Even if proof of such a "general scheme" were sufficient to admit evidence of the other offenses, the record does not establish that such a scheme existed. As discussed above, there was no evidence that appellant committed these murders to protect a

drug business in which he was engaged. Indeed, no evidence established appellant was involved in the drug trade. Likewise, the Commonwealth introduced no evidence that appellant was a member of a gang or that the murders were gang-related. In short, "[t]here is no evidence of a plan tying [the offenses] together or showing that each offense was intended to assist in accomplishing a goal other than that achieved by each individual offense. The four offenses merely show that [appellant] has the propensity to commit the crime and this inference has been held to be error because it reverses his presumption of innocence." Spence, 12 Va. App. at 1044-45, 407 S.E.2d at 918.

The Commonwealth also alleges any error in joining the offenses was harmless because the evidence supporting appellant's conviction for Murder #3 was "overwhelming." Burley, 29 Va. App. at 150, 510 S.E.2d at 270 (error had no effect on the verdict where the other evidence was overwhelming). We disagree. Although appellant admitted killing Randy Smith, he claimed it was in self-defense. The only evidence refuting appellant's claim of self-defense came from Kenneth Daniels, a participant in the altercation, and from Timothy Frazier, who participated with appellant in committing Murders #1 and 2. Although the jury was entitled to disbelieve appellant's testimony, Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986), we cannot say the evidence supporting a first degree murder conviction for the killing of

Randy Smith was so overwhelming that the erroneous joinder of the other murder charges "clearly had no impact upon the verdict." Burley, 29 Va. App. at 149, 510 S.E.2d at 270.

Furthermore, even had the evidence of appellant's guilt been overwhelming, the error was not harmless because the inadmissible evidence of the other three murders may have affected the jury's decision concerning an appropriate sentence for the murder of Randy Smith. Long v. Commonwealth, 20 Va. App. 223, 227, 456 S.E.2d 138, 140 (1995); see also Burley, 29 Va. App. at 149, 510 S.E.2d at 270 (error harmless where it "clearly has had no impact upon the verdict or sentence in a case"). Here, although appellant was acquitted of two of the four murder charges, the jury deadlocked on the fourth charge, indicating that at least one juror thought appellant was guilty of a murder other than the one for which he was convicted. We cannot say the sentence ultimately imposed upon a finding of guilt for the murder of Randy Smith was not affected by the joinder for trial of the other murder charges.

Because we find the trial court abused its discretion in joining the four murder charges and that the error was not harmless, we reverse the convictions for the murder of Kenneth "Randy" Smith and the related firearm charge and remand for a new trial on those two counts, if the Commonwealth be so disposed. Long, 20 Va. App. at 227, 456 S.E.2d at 140; Godwin, 6 Va. App. at 123, 367 S.E.2d at 522.

<u>Reversed and remanded</u>.