Present: All the Justices

COMMONWEALTH OF VIRGINIA
                                        OPINION BY
v.  Record No. 010749       CHIEF JUSTICE HARRY L. CARRICO
                                       January 11, 2002
MELVIN DOUGLAS SMITH, JR.

              FROM THE COURT OF APPEALS OF VIRGINIA


     In the trial court, the defendant, Melvin Douglas Smith,

Jr., was indicted in connection with four murders.  In

Indictment No. F-98-2375, he was charged with first degree

murder in the killing of Bruce Ross (Code § 18.2-32), in

Indictment No. F-98-2373 with capital murder in the killing of

Irvin Doughty as part of the same act or transaction as the

murder of Bruce Ross (Code § 18.2-31(7)), in Indictment No. F-

98-2379 with first degree murder in the killing of Kenneth

"Randy" Smith (Code § 18.2-32),[1] and in Indictment No. F-98-2383

with capital murder in the killing of Warrick Ray within three

years of the murder of "Irving Doughty and/or Bruce Ross and/or

Kenneth 'Randy' Smith" (Code § 18.2-31(8)).

     Pretrial, the defendant filed a motion to sever, seeking

separate trials on the several charges against him.  The trial

court denied the motion, and all the charges were submitted to

the same jury.  The jury convicted the defendant only of first

degree murder in the killing of Kenneth "Randy" Smith

_____

     [1] The defendant and Kenneth "Randy" Smith were not related.

(Indictment No. F-98-2379) and fixed the defendant's punishment at fifty-five years in the penitentiary.

The jury acquitted the defendant of first degree murder in the killing of Bruce Ross (Indictment No. F-98-2375) and of capital murder in the killing of Irvin Doughty as part of the same act or transaction as the murder of Bruce Ross (Indictment No. F-98-2373). The jury failed to reach a verdict on the charge of capital murder in the killing of Warrick Ray within three years of the murder of Irvin Doughty, Bruce Ross, or Kenneth "Randy" Smith (Indictment No. F-98-2383), and the trial court declared a mistrial with respect to that charge. The trial court imposed upon the defendant the fifty-five year sentence fixed by the jury for the murder of Kenneth "Randy" Smith, but suspended seven years of the sentence.

The defendant appealed his conviction for the murder of Kenneth "Randy" Smith to the Court of Appeals. In a published opinion, the Court of Appeals reversed the conviction, holding that the trial court abused its discretion in refusing to grant the defendant's motion for separate trials. Smith v. Commonwealth, 35 Va. App. 68, 78, 542 S.E.2d 803, 807 (2001). We awarded the Commonwealth this appeal.

The Commonwealth presented evidence before the jury showing that on November 20, 1994, the defendant and a friend, Timothy Leon Frazier, while armed, went to a convenience store in

2

Richmond.  There, they encountered and fired at Tyrone Reed in apparent retaliation for Reed's earlier involvement in the killing of another of the defendant's friends, Michael Atkins. "A whole lot of shots" were fired, and, in the melee, two bystanders, Irvin Doughty and Bruce Ross, were killed.

On March 23, 1995, the defendant encountered Kenneth "Randy" Smith in a Richmond alley and shot and killed him because the defendant "thought Randy was being paid to kill him."  Testifying in his own behalf, the defendant said he killed "Randy" in self-defense when "Randy" reached for a gun to shoot him.

On August 19, 1996, the defendant shot and killed Warrick Ray in a Richmond rooming house.  The defendant told Timothy Frazier he "felt like he had to kill [Ray] because he knew where [the defendant] lived out in Chesterfield [County]."  The defendant says on brief that Ray "was killed because he knew where [the defendant] lived and might have been a threat to [the defendant] or his family."

The sole question for decision is whether the trial court erred in denying the defendant's motion for separate trials. "Whether different offenses should be tried separately is a matter that rests within the sound discretion of a trial court," and "a trial court's ruling on the matter will not be reversed absent a showing that the court abused its discretion."  Cheng

3

v. Commonwealth, 240 Va. 26, 33-34, 393 S.E.2d 599, 603 (1990).

Rule 3A:10(c) of the Rules of Court provides in pertinent part that "[t]he court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and . . . the offenses meet the requirements of Rule 3A:6(b)."[2]  Rule 3A:6(b) provides that "[t]wo or more offenses . . . may be charged in separate counts of an indictment . . . if the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan."

The Commonwealth contends it was proper for the trial court to try all the charges together because the defendant was associated with one of two rival gangs engaged in a feud competing for the drug trade in the Richmond area and the offenses arose as a part of the continuing feud.  Hence, the Commonwealth maintains, the four murders "were connected and were part of a common scheme or plan," as required by Rule 3A:6(b)."

On the other hand, the defendant contends the Court of Appeals correctly found there was no evidence that he was involved in the drug trade, that he or any of his victims were members of a gang, that the motive for any of the murders was

---

[2] The defendant makes no argument concerning the part of Rule 3A:10(c) that permits joinder "if justice does not require

4

drug-related, or that the murders were gang-related.  Clearly, therefore, the defendant says, his "crimes were not 'connected' as described by case law."

The defendant cites Kirkpatrick v. Commonwealth, 211 Va. 269, 176 S.E.2d 802 (1970), where we said that to find a connection between two or more crimes they must be " 'so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety.' " Id. at 273, 176 S.E.2d at 806 (quoting Walker v. Commonwealth, 28 Va. (1 Leigh) 574, 576 (1829)).  Here, the defendant asserts, his "cases were not 'connected' by **any** facts [and the] only thing they even had in common was the name of one of the alleged perpetrators."[3]

These arguments are interesting but are for the most part irrelevant in light of what we consider an overriding alternative argument advanced by the Commonwealth here and in the Court of Appeals.  The Commonwealth says that because the capital murder charge alleged in Indictment No. F-98-2383 required proof of the murder of "Irvin Doughty and/or Bruce Ross

---

separate trials."

[3] The defendant argues on brief that under Code § 18.2-31(8), the Commonwealth is required to "try a predicate killing first," secure a murder conviction, "and then [try] the capital case."  However, nothing in the statute even suggests such a requirement.

and/or Kenneth 'Randy' Smith," all four murders were properly joined for trial.[4]

The Court of Appeals dismissed the Commonwealth's alternative argument with this statement:  "[T]he Commonwealth cites no authority for supplanting the joinder test under Rule 3A:10(c) when the Commonwealth seeks to try a defendant not only for capital murder under Code § 18.2-31(8), but for the predicate murders as well.  To try the offenses jointly, each offense must satisfy the requirements of Rule 3A:6(b)."  Smith, 35 Va. App. at 75, 542 S.E.2d at 806.

However, the Commonwealth does cite authority for trying a defendant for capital murder under Code § 18.2-31(8) and for the predicate murders as well.  The Commonwealth cites the statute itself, which provides that "[t]he willful, deliberate, and premeditated killing of more than one person within a three-year period" shall constitute capital murder.  The Commonwealth then says of the statute:

> Virginia's capital murder statute defines separate species of capital murder, which are united by a common structure of "gradation."  See E. Fitzgerald v. Commonwealth, 223 Va. 615, 636, 292 S.E.2d 798, 810 (1982).  In each instance, an aggravating circumstance, which is often a gradation or nexus crime, is required to elevate the offense from a standard, premeditated first-degree murder to capital murder.  See Burlile [v. Commonwealth, 261 Va. 501, 510, 544 S.E.2d 360, 365 (2001)] ([citing] Graham v. Commonwealth, 250 Va. 487, 491, 464 S.E.2d 128,

---

[4] No question has been raised here about the validity of Indictment No. F-98-2383.

6

130 (1995)).  Under § 18.2-31(8), "the gradation crime is the defendant's killing of more than one person within a three-year period."  [Burlile, 261 Va.] at 511, 544 S.E.2d at 365.

We are of opinion that, in this context, "gradation" equates with "connection" and, hence, that Code § 18.2-31(8) supplies the connection to satisfy the requirement for joinder specified by Rule 3A:10(c).  The connection is the fact that the capital murder and the predicate murder or murders occur within a three-year period, a connection similar to the link the General Assembly has established between capital murders and predicate offenses in other subsections of Code § 18.2-31.  See, e.g., Graham, 250 Va. at 491, 464 S.E.2d at 130 (under Code § 18.2-31(7), "the gradation crime is the defendant's killing of more than one person as part of the same act or transaction").

This analysis does not supplant the joinder test under Rule 3A:10(c), as the Court of Appeals indicated would be the result of adopting the Commonwealth's alternative argument.  Rather, the analysis affirms the test but recognizes the authority of the General Assembly to modify a rule of this Court or an interpretation we have given one of our rules.  Va. Const. Art. VI, § 5 ("rules [of this Court] shall not be in conflict with the general law as the same shall, from time to time, be established by the General Assembly"); Code § 8.01-3(D) ("[t]he General Assembly may, from time to time, by the enactment of a

7

general law, modify, or annul any rules adopted or amended [by this Court])."

For the purposes sought to be served by Code § 18.2-31(8), the General Assembly has implicitly modified Rule 3A:6(b) to the extent that the meaning we gave the words "connected crimes" in Kirkpatrick, 211 Va. at 273, 176 S.E.2d at 806, i.e., " 'so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety,' " no longer applies.  Rather, to establish the required connection for a joint trial of offenses under Code § 18.2-31(8), it is only necessary to show that the capital murder and the predicate murder or murders occurred within three years.

The defendant argues, however, that when, as here, "four murders, occurring on three separate occasions[,] are put before the jury, the sheer seriousness and number of charges must create prejudice violative of due process."  The courts have been "acutely aware of such necessary prejudice," the defendant says, "and have enumerated precise conditions under which the Commonwealth may join counts or charges despite the prejudice that will result thereafter."

We disagree with the defendant's argument concerning prejudice.  We have merely done here what the defendant's argument concedes courts may do.  We have determined the precise condition under which the Commonwealth may join two or more

8

counts or charges of murder in a prosecution under Code § 18.2-31(8) despite the prejudice that may result thereafter. The precise condition is that the murders shall have occurred within a three year period, a condition that clearly was met in this case.

Accordingly, we hold that the Court of Appeals erred in finding that the trial court abused its discretion in denying the defendant's motion to sever. Accordingly, we will reverse the judgment of the Court of Appeals, enter final judgment here reinstating the judgment of the trial court, and remand the case to the Court of Appeals with directions to remand the matter to the trial court for enforcement of the sentencing order.

<u>Reversed and remanded</u>.