COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Kelsey and Haley
Argued by teleconference


TYREE MACARTHUR COLEY
                                                                OPINION BY
v.        Record No. 0275-09-2                        JUDGE ROBERT P. FRANK
                                                              FEBRUARY 9, 2010
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Theodore J. Markow, Judge

            Gregory R. Sheldon (Bain Sheldon, P.L.C., on brief), for appellant.

            Robert H. Anderson, III, Senior Assistant Attorney General
            (William C. Mims, Attorney General, on brief), for appellee.


        Tyree MacArthur Coley, appellant, appeals his convictions, following a bench trial, for

evading and eluding, in violation of Code § 46.2-817, leaving the scene of an accident, in

violation of Code § 46.2-894, and two counts of assault and battery on a law enforcement officer,

in violation of Code § 18.2-57. On appeal, he contends that the trial court erred in failing to

grant him a new trial when it was discovered that exculpatory evidence known to the police was

not disclosed to him prior to his trial. For the reasons that follow, we affirm.

                                      BACKGROUND

        Under well established principles of appellate review, we view the evidence and all

reasonable inferences deducible from that evidence in the light most favorable to the

Commonwealth, the party prevailing below. Banks v. Commonwealth, 41 Va. App. 539, 543,

586 S.E.2d 876, 877 (2003). So viewed, the evidence proved that on March 15, 2008, Richmond

police officers were conducting outstanding warrant checks at a particular motel, checking the

names of registered guests. Officers Derrick Longoria and William Bagent determined that

Room 150 was registered to appellant and that he had an outstanding warrant from Petersburg. The officers knocked on the door of Room 150, but no one answered.

As they returned to their police vehicle, the officers saw a silver Ford Explorer back out of a parking space quickly and spin its wheels as it left the area. The officers followed the Explorer from the hotel parking lot. The Explorer then pulled into a parking space at a gas station across the street from the motel.

From less than 13 feet away in the well-lit parking lot, Officer Longoria saw the driver of the Explorer get out, look at him, and then walk into the store. Longoria noticed an indentation under the driver's right eye. Longoria recognized the driver from a previous encounter and told Officer Bagent that the driver was Tyree Coley.

However, before backup officers arrived, appellant returned to his vehicle and left the parking lot. Longoria and Bagent attempted a traffic stop. Appellant drove back to the gas station and, as the officers exited their police vehicle, the vehicle backed up and rammed the police vehicle. Appellant drove off again. Longoria and Bagent pursued appellant onto the ramp of Interstate 95 South. The vehicle again stopped, and appellant attempted to ram his vehicle into the police vehicle.[1] Although they continued to pursue appellant, the officers lost sight of the Explorer.

The officers then executed a search warrant on Room 150. They found a duffle bag containing five or six pictures of appellant posing with his friends. The photographs were not produced at trial. At trial, Officer Longoria testified that the search of the hotel room produced no other identifying items. Officer Bagent testified that he did not recall if other identifying items were found.

---

[1] At trial, Longoria testified that he did not recall testifying at preliminary hearing that the Explorer did more damage the second time it hit the police vehicle.

After completing the search, both officers pulled recent and older photographs of appellant and his twin brother, Tyrone Coley. Longoria also took the photographs to the gas station for the clerk to identify. At trial, both officers testified that appellant, not his brother, had been driving the Explorer.

Officer Longoria testified that the driver who returned to the gas station and rammed the police vehicle was the same person who had first driven into the gas station parking lot. Longoria stated that during the pursuit, the driver looked right at them. Longoria noticed an indentation under appellant's right eye. Longoria testified that he knew appellant had a tattoo on the right side of his neck, but he could not testify to seeing it that night. Bagent testified that appellant "was definitely the same individual that I saw driving the silver Ford Explorer." Bagent also testified that appellant had an indentation on the left side of his face and that based on a photograph from 2005, Tyrone Coley was much heavier than appellant.

Longoria testified that he did not write the police report of this incident. Bagent testified that he could not remember who wrote the report. The parties stipulated that the police report contained no reference to an indentation in appellant's face.

Appellant's mother, Constance Coley, testified that her son Tyrone had been a fugitive for about five years. She stated that in March 2008, Tyrone and appellant were the same height and weight and wore their hair in a similar fashion. She also testified that she went to the motel in question on the night of the incident. She was not there to see appellant, but she testified that appellant was there.

Latonya Terry, a convicted felon, testified that she was with appellant from 7:00 a.m. on March 15 until 4:00 a.m. the following day. Terry stated that she remembered the date because a friend of hers and appellant's had died on that date in 2005.

The trial court convicted appellant of the charges, stating, "on the evidence I find beyond a reasonable doubt that you were the person involved in these events."

After his conviction but before his sentencing, appellant filed a motion to set aside the verdict and for a new trial. The motion alleged the Commonwealth failed to disclose exculpatory evidence; specifically 1) that police recovered a document from Room 150 of the motel bearing the name of Jeremy Venable; 2) that the officers testified differently as to the location of the indentation on appellant's face; 3) that Longoria was aware of appellant's tattoo prior to the March 15, 2008 encounter, but did not observe the tattoo from a distance of less than 13 feet; 4) that neither officer knew who wrote the police report and that the report did not mention any indentation on the driver's face; and 5) that Longoria had previously testified that the Explorer struck the police vehicle a second time on 95 south, causing more damage than the first impact.

After a hearing on appellant's motion, the trial court overruled the motion.

## STANDARD OF REVIEW

"In making a <u>Brady</u> challenge, '[a] defendant cannot simply allege the presence of favorable material and win reversal of his conviction. Rather, [he] must *prove* the favorable character of evidence he claims has been improperly suppressed. Speculative allegations are not adequate.'" <u>Currie v. Commonwealth</u>, 30 Va. App. 58, 67, 515 S.E.2d 335, 340 (1999) (quoting <u>Hughes v. Commonwealth</u>, 18 Va. App. 510, 526, 446 S.E.2d 451, 461 (1994)). "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985).

## ANALYSIS

"A <u>Brady</u> violation occurs when the government fails to disclose evidence materially favorable to the accused." <u>Youngblood v. West Virginia</u>, 547 U.S. 867, 869 (2006) (citing

Brady v. Maryland, 373 U.S. 83, 87 (1963)).  The United States Supreme Court has held that Brady obligations extend not only to exculpatory evidence, but also to impeachment evidence, Bagley, 473 U.S. at 676, and that a Brady violation exists even when the government fails to divulge evidence that is "known only to police investigators and not to the prosecutor."  Kyles v. Whitley, 514 U.S. 419, 438 (1995).  "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  Id. at 437.

"There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Id. at 280 (quoting Bagley, 473 U.S. at 682).  However, it is not necessary to demonstrate "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal."  Kyles, 514 U.S. at 434.  A conviction must be reversed if the accused shows "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  Id. at 435.

In this case, four of the five pieces of non-disclosed information mentioned by appellant were either discovered during the trial or could have been secured had appellant exercised reasonable diligence.  Only the first piece of evidence – the document bearing Jeremy Venable's name – became available to appellant after the conclusion of his trial.

Appellant complains that Officers Longoria and Bagent gave inconsistent testimony as to the location of the indentation on his face, that neither officer knew who wrote the police report,

and that the police report contained no reference to any indentation on the driver's face. It is undisputed that these pieces of information were not disclosed to appellant. However, none of this results in a <u>Brady</u> violation.

Once the trial was in progress, the officers' testimony revealed inconsistencies as to the location of the indentation on appellant's face. Appellant had the opportunity to explore the inconsistency, as well as the omission of the indentation in the police report, through cross-examination, and he did so. Appellant's mother testified, and appellant did not take that opportunity to explore whether his twin brother had an indentation on his face. Therefore, appellant suffered no prejudice.

Appellant also argues that he was prejudiced by Officer Longoria's testimony at trial that although Longoria was aware of appellant's tattoo prior to their encounter on March 15, 2008, he did not observe it that night. This argument is without merit. Longoria's testimony at trial revealed this fact, and again, appellant had the opportunity to cross-examine Longoria. Appellant fully explored any alleged weaknesses in Longoria's testimony. Further, appellant also had the opportunity to ask his mother whether his twin had a tattoo. His failure to do so does not constitute trial court error.

Appellant cites <u>Bowman v. Commonwealth</u>, 248 Va. 130, 445 S.E.2d 110 (1994), to support his position. However, <u>Bowman</u> is distinguished on its facts. The arresting officer, in his police report, described the suspect as approximately five-foot-eight, 150 pounds. The same officer, who had seen appellant approximately 12 times, identified appellant in a photo lineup. At the time of the offense, appellant weighed approximately 194 pounds and was six feet two inches. At trial, Bowman contended this discrepancy in height and weight affected the officer's credibility and was exculpatory. Appellant moved for a dismissal based on the prosecution's failure to disclose this evidence. The trial court denied the motion.

The Supreme Court of Virginia determined that Bowman learned of the discrepancies in the Commonwealth's evidence during trial and was allowed to cross-examine the officer on that issue. Thus, the Court concluded Bowman was able to effectively challenge the credibility of the officer. No Brady violation occurred as to credibility. However, the Court reached a different conclusion as to Bowman's argument concerning mistaken identity. Id. at 134, 445 S.E.2d at 112.

The Court indicated the drug sale occurred late at night, the officer was in Bowman's presence for only five or six minutes, and the photo identification was made over 30 days after the sale. In addition to a size discrepancy, the undisclosed report indicated Bowman had two scars on his face. The Bowman Court concluded these facts suggested a "possibility of mistaken identity." Id.

The Supreme Court of Virginia concluded Bowman "reasonably may have taken different and potentially significant actions which could have strengthened [his] defense." Id. at 134-35, 445 S.E.2d at 112. Essentially, the Court in Bowman reviewed the facts and determined there was a possibility of mistaken identity. Here, however, there is no such possibility that the two officers confused appellant with his twin brother.

Officer Longoria did not need a photo lineup to identify appellant. He knew him from a previous encounter and knew him by name. He identified appellant at the scene. Officer Bagent also saw appellant and identified him. The officers saw appellant in a well-lit parking lot from less than 13 feet away. The room registered to appellant contained numerous photos of appellant, not his twin brother. The record further revealed the two police officers had the opportunity to view photos of appellant and his twin and continued to identify appellant as the suspect. Further, appellant's mother placed appellant, not his twin, at the motel on the night of the incident.

The inconsistent testimony as to the location of the indentation on appellant's face, which officer wrote the police report, and the number of impacts to the police vehicle are credibility issues resolved by Bowman.

Longoria indicated he knew appellant had a tattoo on his neck but he could not testify as to whether he saw it that night. This fact does not support the conclusion that Longoria confused appellant with his twin. No evidence suggests the twin was in the vicinity. To the contrary, appellant's mother testified the twin was a fugitive for about five years, but that she saw appellant at the motel.

Unlike Bowman, where his conviction was based on the officer's sole testimony, here two officers identified appellant without hesitation and appellant's mother placed him at the motel.

Furthermore, our recent decision in Bly v. Commonwealth, 55 Va. App. 1, 10, 682 S.E.2d 556, 561 (2009), controls. In Bly, we held,

> "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Caprino v. Commonwealth, 53 Va. App. 181, 184, 670 S.E.2d 36, 37-38 (2008) (quoting Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977)); see Groves v. Commonwealth, 50 Va. App. 57, 61-62, 646 S.E.2d 28, 30 (2007) ("This means the 'judge is presumed to know the law and apply it correctly in each case.'" (quoting Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003))).

Id.

As in Bly, appellant points to no such evidence to rebut this presumption. "Thus, for purposes of this appeal, we presume the trial court correctly applied the principles dictated by Brady and made a factual determination that [appellant] was not prejudiced by the Commonwealth's nondisclosure of the [non-disclosed] information." Id. at 10-11, 682 S.E.2d at 561. See Deville v. Commonwealth, 47 Va. App. 754, 757-58, 627 S.E.2d 530, 532 (2006)

(explaining that the trial court's "no prejudice" determination under <u>Brady</u>, following appellant's bench trial, was a factual finding).

We concluded in <u>Bly</u>,

> Accordingly, here, as in <u>Deville</u>, where "a trial judge, sitting as 'both trier of fact and arbiter of law,' finds the <u>Brady</u> evidence inconsequential, there can be 'no logical possibility' that its earlier disclosure 'would have altered the outcome of the case.'" <u>Id.</u> at 757-58, 627 S.E.2d at 532 (quoting <u>Stroik v. State</u>, 671 A.2d 1335, 1340 (Del. 1996)). That is because, "[u]nder such circumstances, we need not hypothesize how a reasonable jury would likely have reacted to the new information. We know with certitude, from the factfinder himself, that the outcome of the proceeding would not have been different had the evidence been disclosed earlier." <u>Id.</u> However, as further explained in <u>Deville</u>, "a trial court cannot foreclose appellate review by an *ipse dixit* denial of prejudice. Just as the original finding of guilt must fail if no 'rational trier of fact' could have made such a finding, so too the factual finding of no prejudice should be set aside if patently unreasonable." <u>Id.</u> (internal citations omitted).

<u>Bly</u>, 55 Va. App. at 11, 682 S.E.2d at 561.

As in <u>Bly</u>, from our review of the record, we cannot say the trial judge's presumptive finding of no prejudice was patently unreasonable.

Appellant also assigns much importance to the fact that Officer Longoria had previously testified at the appellant's preliminary hearing that the Explorer struck the police vehicle a second time on 95 south, causing more damage than the first impact. Again, this information emerged during Longoria's trial testimony, and appellant was able to explore this inconsistency by way of his cross-examination. Further, to the extent that the preliminary hearing testimony showed an inconsistency, appellant had access to that transcript as much as the Commonwealth did. Indeed, appellant and his counsel were present at the preliminary hearing and had the opportunity to hear Longoria's testimony.

Each of these aforementioned pieces of information came to light during the course of appellant's trial. Appellant could have discovered some of this evidence himself. Further,

appellant had the opportunity to question and impeach the Commonwealth's witnesses with this information through cross-examination. He also referred to these discrepancies in his closing argument. Appellant therefore suffered no prejudice. Appellant did not claim surprise, did not ask for a continuance,[2] and had an adequate opportunity to explore any inconsistencies, so no harm resulted.

Finally, appellant contends the trial judge should have granted his motion for a new trial based on the fact that police recovered a document from Room 150 of the motel bearing the name of Jeremy Venable. This information was admittedly not disclosed to appellant until after his trial. However, the information is neither relevant nor exculpatory. The issue of a possible mistaken identity involved only appellant and his twin brother, Tyrone Coley. Appellant never advanced any theory that Jeremy Venable was the driver.

Furthermore, police did not recover Venable's identification, mail, or other documents indicating that he had been in Room 150. The document was simply a piece of paper with Venable's name, Richmond City Jail number, tier number, and jail address. This does not support a theory that Venable was driving the Explorer. Its exculpatory value is questionable, and the document is certainly not material.

Finally, the Commonwealth's other evidence is so overwhelming that the nondisclosure of this piece of information did not prejudice appellant. See generally Jefferson v. Commonwealth, 27 Va. App. 477, 487, 500 S.E.2d 219, 224 (1998). In Jefferson, the Commonwealth did not disclose a statement from an eyewitness to a shooting that she could not

---

[2] See generally Frye v. Commonwealth, 231 Va. 370, 345 S.E.2d 267 (1986) (holding that the trial court is under no duty to offer a remedy for which the defendant has not asked).

see without her glasses. See id. at 481, 500 S.E.2d at 221. However, there were three other eyewitnesses who testified that they saw the defendant shoot the victim. Id. at 482, 500 S.E.2d at 222. This Court ruled that faced with such overwhelming evidence of guilt, there was nothing in the record to show that the nondisclosed information was prejudicial or material to the defendant. Id. at 488, 500 S.E.2d at 225.

Likewise, in this case, Officers Longoria and Bagent determined that appellant was the registered guest of Room 150. They then observed the Explorer leave the motel parking lot, and they followed the vehicle to a well-lit parking lot at a gas station. Both officers saw the driver, and Longoria recognized the driver as appellant. When officers later searched the motel room, they discovered photographs of appellant posing with his friends. The evidence against appellant was so strong that the nondisclosure of a piece of paper bearing Jeremy Venable's name caused no harm or prejudice to appellant.

The Commonwealth failed to disclose evidence to which appellant was entitled. However, this nondisclosure caused no prejudice to appellant and did not undermine confidence in the outcome of his trial. Therefore, appellant was not entitled to a new trial.

CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in refusing to grant appellant a new trial. We therefore affirm appellant's convictions.

Affirmed.