COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Petty and Huff
Argued at Salem, Virginia


BRIAN HEATH DOSS

OPINION BY
v.        Record No. 1136-10-3        JUDGE GLEN A. HUFF
                                      JANUARY 10, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

James C. Martin (Martin & Martin Law Firm, on briefs), for
appellant.

John W. Blanton, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Brian Heath Doss ("appellant") appeals his conviction of one count of distribution of a

Schedule II controlled substance, first offense, in violation of Code § 18.2-248, and one count of

distribution of a Schedule II controlled substance, a second or subsequent offense, in violation of

Code § 18.2-248. Following a jury trial in the Circuit Court of Pittsylvania County ("trial

court"), appellant was sentenced to twenty-five years imprisonment on each count as well as a

fine of $100,000 on each count, which fine the trial court suspended.

On appeal, appellant contends that the trial court erred in denying 1) appellant's motion

to sever when appellant did not consent to having the charges tried together and the

circumstances did not comply with the requirements of Rule 3A:10, 2) appellant's motion *in

limine* in allowing Michael Cox ("Cox") to testify when he had no knowledge of the alleged drug

deals on November 1 and November 4, 2008, and 3) a new trial where his rights were violated

when the Commonwealth's attorney and authorities failed to provide information concerning a

failed urine test by informant Mark Bell ("Bell") along with other impeachment and exculpatory material. For the following reasons, we affirm the appellant's convictions.

## I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

### A. The Informant

On October 17, 2008, Investigator William Chaney ("Chaney"), with the Pittsylvania County Sheriff's Office, and other officers with the regional Drug Task Force executed a search warrant at Bell's residence. They found cocaine and cash at the residence, and arrested Bell on four charges of possession of cocaine with the intent to distribute. Shortly after his arrest, Bell offered to cooperate with Pittsylvania County police investigations of drug distribution in an effort to avoid both federal charges and charges in other localities within the Commonwealth.

Bell informed the investigators that appellant had been his primary source of cocaine for several months. Bell stated that appellant would "front" him one ounce of cocaine at a time, which Bell then would sell and pay appellant $1,100 for the "fronted" cocaine. Bell also informed the investigators that he occasionally had purchased drugs from another dealer named Joseph Tweedy ("Tweedy").[1] Bell claimed that appellant was aware of the purchases from Tweedy and that appellant had told Bell that he was "crossing [appellant's] toes" and Bell should not buy drugs from

---

[1] Tweedy is referred to throughout the record as Joe, Joseph, or Jody Tweedy. It is not apparent from the record which name is the correct name since he never testified at trial.

somebody else.  When appellant spoke with Bell, Bell owed appellant approximately $3,200 from prior dealings with appellant.

Bell agreed to make a controlled purchase from appellant, so Chaney provided state and county money for Bell to pay appellant the sums that Bell owed him.  Under Chaney's supervision, Bell made several controlled buys from Tweedy and appellant in October outside of Pittsylvania County.  As usual, appellant "fronted" Bell the cocaine, and required Bell to repay him before appellant would supply Bell with more cocaine.

## B.  November 1, 2008 Controlled Buy

On November 1, 2008, Chaney, Sergeant Ford, with the Pittsylvania County Sheriff's Office, and Special Agent Alan Ruis ("Ruis"), with the Virginia State Police, were involved with a controlled buy between Bell and appellant.  The officers met with Bell, and provided him with a digital audio recorder and a wire.  The officers also searched Bell and his truck prior to the controlled buy to ensure that he had no other drugs or money in his possession.  In addition, Chaney provided Bell with $1,100 so that Bell could repay appellant for a prior transaction.

On that day, Bell was unable to reach appellant by telephone, so he drove to appellant's house in an attempt to find appellant.  The officers followed Bell as he drove to appellant's residence, and waited nearby.  When Bell arrived at appellant's house, Bell and appellant went outside to a two-car garage behind the house where appellant stored the cocaine in a black trash bag inside a five-gallon bucket.  Appellant retrieved digital scales from the house, returned to the garage, and weighed out an ounce of cocaine for Bell.  Bell pocketed the cocaine, and left appellant's property after he had given appellant the $1,100.

After Bell left appellant's home, Ruis followed Bell as he drove directly to the agreed upon meeting place, and Ruis never lost sight of him.  Once they arrived, Ruis immediately confiscated

the cocaine, searched Bell and his vehicle, and found nothing. Ruis promptly turned the cocaine over to Chaney when he arrived at the meeting place.

C. November 4, 2008 Controlled Buy

On November 4, 2008, Corporal Jacob Sparks ("Sparks"), along with three other officers from the Pittsylvania County Sheriff's Department, met with Bell at a predetermined location in preparation for another controlled buy between Bell and appellant. The officers searched Bell and his vehicle for any contraband or cash, and found nothing. Bell made a cellular telephone call to appellant, which was recorded, and learned that appellant was at his mother's house in Alta Vista, Virginia. Sparks gave Bell $1,100 to pay appellant for the cocaine he had obtained from appellant on November 1, 2008. Sparks also wired Bell with video recording equipment as well as audio recording equipment that was capable of broadcasting.

Bell then drove to appellant's mother's house in Alta Vista with the officers following him, and gave appellant the $1,100 in payment for the November 1, 2008 cocaine transaction. Bell subsequently rode with appellant to a local bank where appellant made a cash deposit. After returning to appellant's mother's house, appellant told Bell he would call Bell later that day because he could not give Bell any cocaine at that time since he was at his mother's house. Bell left appellant's mother's house, and went to meet the officers at the designated meeting place. After waiting for some time at the designated meeting place for appellant to call Bell, the officers and Bell relocated to the original location where they had met earlier in the day.

As Bell was driving to the original location, appellant called Bell on his cellular telephone, and told Bell he was ready to meet with Bell at appellant's house in Pittsylvania County. After being outfitted again with the audio and video recording equipment, Bell drove to appellant's house and went with appellant to the same two-car garage behind appellant's house. Appellant went to the same five-gallon bucket as before, and weighed out an ounce of cocaine for Bell. Appellant then

ripped off a piece of the black plastic trash bag containing the cocaine, wrapped Bell's cocaine in the piece of plastic bag, and handed Bell the cocaine. Bell placed the cocaine in his pocket, left appellant's house, met with Sparks, and handed Sparks the cocaine. The officers searched Bell and his vehicle, and found nothing.

### D. The Arrest and Trial

After the two controlled buys, Bell moved to Roanoke, Virginia, and worked construction at William Fleming High School. On January 21, 2009, Ruis paid for Bell's stay in a hotel in Roanoke. As Bell was leaving the high school on January 22, 2009, he noticed a suspicious van in which he thought he saw appellant. Bell immediately telephoned Ruis, and Ruis stated Bell sounded upset and afraid that something was going to happen to him. Bell was moved to another hotel as a result of the telephone call, and appellant was arrested on a warrant based on the November 4, 2008 cocaine sale.

Appellant was indicted on February 17, 2009, in the trial court for the sale of cocaine on November 1, 2008, and the sale of cocaine on November 4, 2008. Both were charged as a second or subsequent offense. Prior to trial, appellant filed a motion to sever the charges for separate trials, a motion to strike the indictment surplusage, and a motion *in limine* requesting the trial court enjoin the Commonwealth from using Cox's testimony at trial. The trial court granted the motion to strike as surplusage language "a second or subsequent offense" from the November 1, 2008 indictment, but denied the motion to strike the language from the November 4, 2008 indictment.

The trial court also denied the motion to sever on the grounds that the evidence of the November 1st transaction was necessary to prove the offense of the November 4th transaction as a second or subsequent offense. Lastly, the trial court denied the motion *in limine* on the grounds that Cox's testimony was relevant and that the relevance was not outweighed by the prejudicial effect. At the hearing, the Commonwealth proffered the anticipated testimony of Cox and Bell.

At the jury trial on October 15-16, 2009, Bell testified regarding his purchase of cocaine from Tweedy. Bell testified that he was the middle man, and had purchased the cocaine from Tweedy for appellant. Bell stated "I went to . . . Tweedy and I got the [cocaine]. . . . And I give [sic] the [cocaine] to [appellant]. . . . It was [appellant's] money that got the [cocaine] to begin with."

### E.  Michael Cox's Testimony

Cox also testified at trial, over appellant's continuing objection, that he supplied appellant with cocaine from June 2008 until appellant's arrest in January 2009. Cox also stated that he had previously visited appellant at his home and that appellant mainly stored his cocaine in the two-car garage in black plastic storage bags. Cox stated that he knew that appellant and Bell hung out and that appellant and Bell had visited Cox at his house where appellant told Cox that Bell was one of his best cocaine distributors. Cox testified that a couple of weeks later, appellant complained to Cox that Bell had "messed up" and owed appellant approximately $3,200 and that Bell was purchasing cocaine from Tweedy.

Cox then testified that appellant called him a week before appellant's arrest, and asked Cox if he knew if Bell was working for the police. Cox stated that he did not know, so appellant asked Cox if he would call and talk to Bell. Cox was unable to get in touch with Bell, so he called appellant back and informed appellant of that fact. On the day prior to appellant's arrest, appellant called Cox again, told Cox that Bell was working for the police, and that appellant was in Roanoke tracking down Bell. Appellant called Cox later on the same day, and told Cox that he found Bell who immediately took off running while on a cellular telephone.

At trial, the Commonwealth introduced testimonial evidence and certificates of analysis from the Department of Forensic Science Laboratory in Roanoke, Virginia, that the samples from the November 1, 2008 incident and November 4, 2008 incident were cocaine. The Commonwealth

also introduced and played for the jury the audio and visual recordings of Bell's November 1 and 4, 2008 transactions with appellant.

F. Facts Pertaining to the Brady Issue

Following the jury trial, appellant was convicted of one count of the sale of cocaine, and of one count of the sale of cocaine, a second or subsequent offense. After the trial, but prior to the sentencing hearing, appellant's counsel received copies of several police reports relating to Bell's arrest and referencing a drug test that Bell took prior to the Pittsylvania County Sheriff's Department utilizing him as a confidential informant. Appellant's counsel received the documents from federal prosecutors who had received them from Ruis pursuant to a separate federal investigation of appellant.

The first report indicates that the search warrant was obtained and executed on Bell's residence on October 17, 2008, cocaine and cash were found at the location, and Bell was arrested. The second report notes that Ruis met with Bell on October 21, 2008, regarding Bell becoming a confidential informant and that Bell had submitted to a drug test by Sparks due to his admission on October 17, 2008 that he had recently used cocaine. The report further notes that, "Sparks read the test as being positive for cocaine so B[ell] was not sign [sic] up as a [confidential informant] at this time."

The second report also contained the following transcription of Ruis's interview of Bell on October 21, 2008:

> This member interviewed B[ell] on where the cocaine he had on 10-17-08 at the search of his home had come from. B[ell] advised that he and [appellant] were discussing obtaining so [sic] cocaine from someone "to keep things rolling". One of [appellant's] associates was out of town and was holding some of [appellant's] cocaine for [appellant]. B[ell] advised that he told [appellant] that he knew a guy named [Tweedy] in Rustburg. B[ell] proceeded to call T[weedy] at [appellant's] direction and order 4 1/2 ounces of powder cocaine for 3800.00 dollars. B[ell] then went to Rustburg and purchased the 4 1/2 ounces of cocaine from T[weedy] with

3800.00 dollars provided by [appellant]. B[ell] then returned to [appellant] and gave him the 4 1/2 ounces of cocaine at which time [appellant] fronted B[ell] 1 ounce of powder cocaine to sell. B[ell] does not remember the exact date but believes that this purchase took place in the week of Oct. 5-11[,] 2008.

The report further notes that Bell claimed that he quickly sold the one ounce of cocaine, so he returned to appellant for two more ounces of cocaine, which appellant fronted to him. The report indicates that when Bell was arrested, he had one ounce of cocaine remaining from the three ounces as well as some cash to repay appellant for the fronted cocaine.

On January 6, 2010, appellant filed an amended motion to set aside the jury verdict and award a new trial. Appellant argued in the motion that 1) the trial court erred in denying Doss's pre-trial motion to strike the surplusage language of "a second or subsequent offense" from the November 4, 2008 indictment; 2) the trial court erred in admitting Michael Cox's testimony; and 3) the Commonwealth withheld evidence that was both material and exculpatory in violation of Brady v. Maryland, 373 U.S. 83 (1963). The trial court heard arguments and testimony on January 12, 2010, and March 20, 2010, regarding the amended motion to set aside, and denied the motion.

At the hearing, the Commonwealth admitted that the reports had not been given to appellant prior to trial. Ruis also testified at the hearing regarding the drug test. Ruis stated that at the time he wrote the note, he had been informed by Sparks that Bell could not be used as a confidential informant because he had tested positive for cocaine. Ruis then explained, however, that he was told either later in the evening on October 21 or on October 22, 2008, that Sparks had misread the drug test and that Bell actually had tested negative for cocaine. Ruis also admitted that he never turned over the documents to the Commonwealth's attorney.

This appeal followed.

II.  ANALYSIS

On appeal, appellant contends that the trial court erred in denying appellant's 1) motion to sever, 2) motion *in limine* to disallow the testimony of Cox, and 3) post-trial motions to set aside the jury verdict on the ground that exculpatory evidence had been withheld from appellant.

A.  Motion to Sever

Appellant first contends that the trial court erred in denying appellant's motion to sever when appellant did not consent to having the charges tried together, and the circumstances did not comply with the requirements of Rule 3A:10.  Specifically, appellant argues that 1) justice required the trials to be separated because evidence of other crimes or other bad acts is inadmissible in the trial of the crime charged, 2) the two offenses were not the "same act or transaction" since they occurred on different days, were not so "connected" that they should be tried together, and were not part of a "common scheme or plan" because they were two separate sales of a controlled substance on different occasions, and 3) the evidence that appellant had previously sold drugs was not relevant to the charge, and the prejudicial effect far outweighed any probative value.

The Commonwealth asserts, however, that it was proper to try the charges together because the first charge was connected to the second charge.  The Commonwealth specifically argues that the charges were connected because the first charged offense was a "gradation" to the second or subsequent charged offense, which pursuant to the Supreme Court's holding in Commonwealth v. Smith, 263 Va. 13, 557 S.E.2d 223 (2002), satisfied the "connection" requirement under Rule 3A:10(c).

"'Whether different offenses should be tried separately is a matter that rests within the sound discretion of a trial court,' and 'a trial court's ruling on the matter will not be reversed absent a showing that the court abused its discretion.'"  Id. at 16, 557 S.E.2d at 225 (quoting

Cheng v. Commonwealth, 240 Va. 26, 33-34, 393 S.E.2d 599, 603 (1990)).  Rule 3A:10(c)

provides in pertinent part that "[t]he court may direct that an accused be tried at one time for all

offenses then pending against him, if justice does not require separate trials and (i) the offenses

meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney

consent thereto."  Since appellant did not consent to the charges being tried together, the trial

court could not try them together unless the offenses met the requirements of Rule 3A:6(b) and

justice did not require separate trials.

"Under Rule 3A:6(b), two or more offenses may be joined in a single indictment 'if the

offenses are [1.] based on the same act or transaction, or [2.] on two or more acts or transactions

that are [a.] connected or [b.] constitute parts of a common scheme or plan.'"  Scott v.

Commonwealth, 274 Va. 636, 644, 651 S.E.2d 630, 634 (2007) (quoting Rule 3A:6(b)).  Nothing

in the record suggests that the two offenses were based on the same act or transaction.  The two

drug transactions occurred on separate dates, and did not constitute the same act or transaction.

Two offenses, however, can be tried together if they are connected or constitute part of a

common scheme or plan.

> A "common scheme or plan" exists when the "relationship among
> the offenses . . . is dependant upon the existence of a plan that ties
> the offenses together and demonstrates that the objective of each
> offense was to contribute to the achievement of a goal not
> attainable by the commission of any of the individual offenses."

Yellardy v. Commonwealth, 38 Va. App. 19, 25, 561 S.E.2d 739, 742 (2002) (quoting Godwin v.

Commonwealth, 6 Va. App. 118, 122, 367 S.E.2d 520, 522 (1988)).

"To meet the 'connected' test, the crimes should be 'so intimately connected and blended

with the main facts adduced in evidence, that they cannot be departed from with propriety.'"

Spence v. Commonwealth, 12 Va. App. 1040, 1044, 407 S.E.2d 916, 918 (1991) (quoting

Kirkpatrick v. Commonwealth, 211 Va. 269, 273, 176 S.E.2d 802, 806 (1970)).  "A reviewing

court must look to whether the transactions were 'closely connected in time, place, and means of commission, all of which supports the use of a single trial.'" Yellardy, 38 Va. App. at 24, 561 S.E.2d at 742 (quoting Satcher v. Commonwealth, 244 Va. 220, 229, 421 S.E.2d 821, 827 (1992)).

In Smith, the Supreme Court held that the trial court did not abuse its discretion when it refused to grant Smith's motion for separate trials for indictments on four murders on the basis that the offenses were connected. 263 Va. at 16-18, 557 S.E.2d at 225-26. The Commonwealth asserted in Smith that there were "separate species" of capital murder in Virginia that were joined by "gradation" – i.e. "an aggravating circumstance, which is often a gradation or nexus crime, [and] is required to elevate the offense from a standard, premeditated first-degree murder to capital murder." Id. at 18, 557 S.E.2d at 226. Based on this, the Supreme Court held "[w]e are of [the] opinion that, in this context, 'gradation' equates with 'connection' and, hence, that Code § 18.2-31(8) supplies the connection to satisfy the requirement for joinder specified by Rule 3A:10(c)." Id.

Similarly, this Court finds that the evidence in this case shows that the two drug offenses arose out of "two or more acts or transactions that are connected," Scott, 274 Va. at 644, 651 S.E.2d at 634, based on "gradation," Smith, 263 Va. at 18, 557 S.E.2d at 226, and thus holds that the trial court did not abuse its discretion in denying the motion to sever the cases. Code § 18.2-248 provided, in pertinent part, at the time of appellant's offense that, "[u]pon a second or subsequent conviction of such a violation, any such person may, in the discretion of the court or jury imposing the sentence, be sentenced to imprisonment for life or for any period not less than five years and be fined not more than $500,000." [2] At that time, the "enhanced punishment may

_____

[2] Appellant also asserts on brief that the amendment to Code § 18.2-248(C), effective July 1, 2009, that the prior conviction supporting a second offense conviction under Code § 18.2-248(C) must have "occurred before the date of the offense alleged in the warrant,

be applied where there are multiple convictions for separate offenses [under Code § 18.2-248] in a simultaneous prosecution." Mason v. Commonwealth, 16 Va. App. 260, 262-63, 430 S.E.2d 543, 544 (1993).

In this instance, an "aggravating circumstance" was required to elevate an offense under Code § 18.2-248 from an initial offense to a second or subsequent conviction. Therefore, similar to the aggravating circumstances in Smith, we hold that the gradation under Code § 18.2-248 satisfied the connection requirement for joinder under Rule 3A:10(c). A first offense sale of cocaine occurred at some point prior to the second or subsequent offense sale of cocaine, thus connecting the two offenses pursuant to the statute as it existed at the time of the offense.

Lastly, justice does not require that the two drug transactions be tried separately. Although appellant correctly notes the general rule that "[j]ustice requires separate trials where the evidence of one of the crimes is not admissible in the trial of the other," Godwin, 6 Va. App. at 123, 367 S.E.2d at 522, justice did not require separate trials in this case where there were multiple offenses of drug distribution under Code § 18.2-248. As the trial court held, evidence of the November 1, 2008 transaction was necessary to prove the November 4, 2008 transaction was a second or subsequent offense. In addition, appellant was not unduly prejudiced by allowing the Commonwealth to join two or more counts or charges under Code § 18.2-248, as evidence of one offense was necessary to prove a second or subsequent offense. Accordingly,

---

indictment, or information," was a procedural amendment, and thus in effect and applicable on the date of this trial such that the motion to sever should have been granted on this ground.

Appellant, however, did not include this in his assignments of error in his petition for appeal. Pursuant to Rule 5A:12(c), "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court." Therefore, we do not consider this argument, and we apply the version of the statute applied in the trial court. Cf. Md. Ctr. Hosps. v. Sharpless, 229 Va. 496, 498, 331 S.E.2d 405, 406 (1985) (holding that jury instructions given without objection became the law of the case and governed resolution of the proceedings even on appeal). Although appellant objected at trial, he did not properly place the issue before this Court on appeal.

the trial court did not abuse its discretion by refusing to sever the offenses because the two offenses met the requirements of Rule 3A:10(c) and Rule 3A:6(b), and justice did not require separate trials.

### B. Motion *in Limine*: Cox's Testimony

Appellant also asserts that the trial court erred in denying appellant's motion *in limine* in allowing Cox to testify when he had no knowledge of the alleged drug deals on November 1 and November 4, 2008.

"'Decisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Swanson v. Commonwealth, 56 Va. App. 147, 152, 692 S.E.2d 256, 258 (2010) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006)). "'Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Id. (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, aff'd on reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)). In addition, "[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse." Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 616 (1990) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).

> "Evidence that shows or tends to show a defendant has committed a prior crime generally is inadmissible to prove the crime charged. Such evidence implicating an accused in other crimes unrelated to the charged offense is inadmissible because it may confuse the issues being tried and cause undue prejudice to the defendant."

McGowan v. Commonwealth, 274 Va. 689, 694, 652 S.E.2d 103, 105 (2007) (quoting Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998)).

- 13 -

The exceptions to the general rule, however, are well established. "In order for evidence that the accused has committed other crimes to be admissible, it need only be relevant to prove a material fact or issue, and its relevance must outweigh the prejudice inherent in proving that an accused has committed other crimes." Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 234 (1993) (citing Spencer, 240 Va. at 89, 393 S.E.2d at 616).

> Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part. Frequently it is impossible to give a connected statement showing the crime charged without incidental reference to such contemporaneous and similar crimes and where there is only such incidental disclosure of other offenses.

Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805. "Evidence of prior drug-related conduct is irrelevant and inadmissible and does not fall within one of the Kirkpatrick exceptions where there has been no showing of an intimate relation or connection between the prior conduct and an element of the crime charged." Wilson, 16 Va. App. at 222, 429 S.E.2d at 234-35 (citing Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805).

In the instant case, Cox's testimony was probative of appellant's relationship with Bell and the fact that appellant had been selling cocaine to Bell. Cox testified that appellant had referred to Bell as his best cocaine distributor, complained that Bell owed him approximately $3,200, and that appellant was angry when Bell began buying cocaine from Tweedy, another cocaine dealer, while still owing appellant money. In addition, Cox confirmed Bell's testimony that appellant stored his cocaine in trash bags in his two-car garage. Cox also confirmed that

appellant was suspicious of Bell, and had in fact tracked Bell down in Roanoke prior to appellant's arrest.

While Cox's testimony also implicated appellant in other uncharged drug transactions, it was highly relevant to the charges at issue in this case in that it confirmed Bell's relationship with appellant and appellant's participation in the cocaine trade with Bell. Accordingly, the probative value of Cox's testimony outweighed the incidental prejudice inherent in the evidence of the prior "bad acts." Thus, the trial court did not abuse its discretion by allowing Cox to testify, and denying appellant's motion *in limine*.

## C. Brady Violation

Lastly, appellant argues that the trial court erred in denying appellant a new trial where his rights were violated when the Commonwealth's attorney and authorities failed to provide information concerning a failed urine test by informant Bell along with other impeachment and exculpatory material.[3] Appellant asserts that the evidence was material because he could have utilized it to impeach Bell on the basis that the failed urine test showed Bell was an unreliable informant.[4]

---

[3] Appellant's language "along with other impeachment and exculpatory material" stated in appellant's opening brief plus his supporting arguments for the referenced language, as well as his assertion that he could have utilized the withheld information to impeach Ruis and the police investigation were not part of appellant's petition for appeal. Appellant's granted assignment of error only included the nondisclosure of the failed drug test with supporting arguments based only on the failure to disclose the information regarding Bell's drug usage and the "failed" urine test, which appellant argued could have been utilized to further impeach Bell. "[T]he defendant failed to raise this issue in his petition for appeal. . . . Thus, no appeal was granted on this issue, and Rule 5A:12(c) prevents us from considering it." Gregory v. Commonwealth, 46 Va. App. 683, 694, 621 S.E.2d 162, 168 (2005). In addition, this Court will not consider arguments raised on brief that were not raised in the petition for appeal. Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991) ("We do not consider this argument, however, since it was not raised in the petition for appeal and no appeal was granted by this Court on that issue." (citing Rule 5A:12(c))).

[4] Appellant also asserts that he could have utilized the evidence to impeach Bell in that it showed "Bell used cocaine." Appellant, however, never raised this argument before the trial

In response, the Commonwealth does not dispute that the evidence inadvertently was suppressed by the Commonwealth, and accepts on brief that the second prong of a "true <u>Brady</u> violation" was proven. The Commonwealth does, however, assert that appellant's arguments based on the urine drug test are unavailing.

"'We review the trial court's findings of historical fact only for "clear error," but we review *de novo* the trial court's application of defined legal standards to the particular facts of a case [. . .] .'" <u>Blue v. Commonwealth</u>, 49 Va. App. 704, 710, 644 S.E.2d 385, 388 (2007) (quoting <u>Quinn v. Commonwealth</u>, 25 Va. App. 702, 712, 492 S.E.2d 470, 475-76 (1997)). "'In making a <u>Brady</u> challenge, [a] defendant cannot simply allege the presence of favorable material and win reversal of his conviction. Rather, [he] must *prove* the favorable character of evidence he claims has been improperly suppressed. Speculative allegations are not adequate.'" <u>Coley v. Commonwealth</u>, 55 Va. App. 624, 630, 688 S.E.2d 288, 291 (2010) (quoting <u>Currie v. Commonwealth</u>, 30 Va. App. 58, 67, 515 S.E.2d 335, 340 (1999)).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87. "<u>Brady</u> obligations extend not only to exculpatory evidence, but also to impeachment evidence, and . . . a <u>Brady</u> violation exists even when the government fails to divulge evidence that is 'known only to police investigators and not to the prosecutor.'" <u>Coley</u>, 55 Va. App. at 630, 688 S.E.2d at 292 (internal citations omitted) (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 438 (1995)).

---

court, and thus we cannot consider it on appeal. Rule 5A:18. While appellant asks this Court to invoke the "ends of justice" exception to Rule 5A:18 to reach the merits of this argument, we may not do so as appellant has not demonstrated "'that he or she was convicted for conduct that was not a criminal offense'" or that "'the record . . . affirmatively prove[s] that an element of the offense did not occur.'" <u>Brittle v. Commonwealth</u>, 54 Va. App. 505, 514, 680 S.E.2d 335, 340 (2009) (quoting <u>Redman v. Commonwealth</u>, 25 Va. App. 215, 221-22, 487 S.E.2d 269, 273 (1997)).

"'There are three components of a true <u>Brady</u> violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'"  <u>Id.</u> at 631, 688 S.E.2d at 292 (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)).  "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."  <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985).

"Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  <u>Coley</u>, 55 Va. App. at 631, 688 S.E.2d at 292 (quoting <u>Strickler</u>, 527 U.S. at 280).  "In other words, a petitioner must show that when the case is evaluated in the context of the entire record, including the omitted evidence, a jury would have entertained a reasonable doubt regarding petitioner's guilt."  <u>Soering v. Deeds</u>, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998).  "However, it is not necessary to demonstrate 'by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.'"  <u>Coley</u>, 55 Va. App. at 631, 688 S.E.2d at 292 (quoting <u>Kyles</u>, 514 U.S. at 434).

Although the Commonwealth failed to disclose the evidence to appellant, this nondisclosure was not material.  The after-discovered evidence shows that Bell submitted to a drug test on October 21, 2008, which Sparks initially misread as being positive.  Someone in the police department discovered the mistaken reading either the same day or the next day, and only then did the police department began utilizing Bell as a confidential informant.  This false reading would have had minimal, if any, bearing on Bell's reliability.

At trial, Bell admitted he was a cocaine dealer under investigation by several different law enforcement agencies, he was working with the police in the hopes of avoiding federal

charges and charges in other localities, and the police had put him up in a hotel.  On cross-examination, Bell agreed that he started working with the police because it was common sense, and he wanted to help himself.  Bell also agreed on cross-examination that he had prior drug convictions and that he was buying and selling cocaine throughout Campbell County and Pittsylvania County.  In closing argument, appellant's counsel stressed several times that the jury should not believe Bell who was lying to cover himself.

Lastly, the evidence not only included Cox's and Bell's testimony, it also included the video tape and audio tape from the transactions as well as the officers' testimony regarding the controlled drug buys.  Based on all of the evidence admitted at trial as well as the omitted evidence, the nondisclosure of the false positive reading was not material, and thus did not undermine confidence in the outcome of the trial.  Accordingly, appellant was not entitled to a new trial, and the trial court did not err.  As we hold the trial court did not err, no harmless error analysis is necessary.

### III.  CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in denying appellant's motion to sever the two offenses, motion *in limine* to bar the admittance of Cox's testimony into evidence, and motion for a new trial on the basis of a Brady violation.  Therefore, we affirm appellant's convictions.

Affirmed.