# COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia

JONAH DWIGHT SIMS

v.      Record No. 0895-21-1

MEMORANDUM OPINION* BY
JUDGE LISA M. LORISH
MAY 24, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Charles E. Haden for appellant.

Leah A. Darron, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Jonah Dwight Sims appeals the trial court's denial of his motion to sever his charges into two separate trials, one for offenses he allegedly committed on September 14, 2019, and one for offenses alleged to have occurred on September 16, 2019. Sims was ultimately acquitted of the September 16, 2019 charges, and convicted of the September 14, 2019 offenses. He also argues here that the evidence was insufficient to sustain the September 14, 2019 convictions. For the reasons detailed below, we affirm the court's decision to proceed with one trial and we do not address Sims's sufficiency of the evidence assignment of error because he failed to timely provide a necessary transcript.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND[1]

Kayleigh Ellifritz and her husband Javon Fraser allowed Sims and his girlfriend to move in with them because they had nowhere else to go. But after a few weeks, Ellifritz asked them to leave the apartment because Sims's girlfriend was incontinent and urinating on the floor. The couple then moved in with a co-worker of Sims in the same apartment complex. The day after they moved out, September 14, 2019, Sims came back to Ellifritz's apartment, kicked her door in, and assaulted Ellifritz. After he left, Ellifrtiz called the police and Sims was ultimately charged with burglary, assault and battery, and destruction of property relating to this encounter. Sims's girlfriend later told police that Sims had become distressed when he discovered there were warrants related to these incidents. She also told police that Sims stated, "Man I oughta shoot this bitch," referring to Ellifritz, and "If I shoot this bitch, I ain't got no charges."

Two days later, on September 16, Ellifritz was at home with her family when an assailant kicked in the door and began shooting. Ellifritz was killed. Fraser survived his injuries and identified Sims as the shooter. Sims was charged with first-degree murder, malicious wounding, armed burglary, discharge of a firearm in an occupied building, and use of a firearm in the commission of a felony, connected to this second incident.

Before trial, Sims moved to sever the case, and requested separate trials for the September 14 and September 16 incidents. The Commonwealth opposed severance for all counts, except a separate possession of a firearm by a convicted felon charge, and proffered facts in a written response. At a hearing on the motion, Sims argued that he was not aware there were warrants for the first incident, that there had been no bad blood between Sims and Ellifritz, and that he had an

[1] We review here only the information provided to the trial court when it considered the pretrial motion to sever, and not what was later presented at the trial for which we lack complete transcripts. We construe all facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

alibi for September 16. The Commonwealth argued that the incidents were connected and that the same witnesses and evidence would be relevant to both trials. The Commonwealth further contended that the September 14 incident established a prior relationship between the parties and demonstrated possible motive and premeditation. The court denied the motion to sever, stating that the events were substantially connected, noting the closeness in dates, that the victim was the same, and that location of the events was the same.

A jury convicted Sims of the September 14 counts and acquitted on the September 16 counts. Sims noticed his appeal on the September 14 convictions. He requested an extension on the transcript submission deadline because the court reporter could not complete the transcripts on time due to family emergencies. This Court granted the extension. The court reporter timely filed transcripts for all but the first day of trial but failed to file the transcript for the first day because her printer broke. Sims's counsel filed another request for an extension after the deadline was missed, but the motion was denied.

## ANALYSIS

Sims argues that the trial court erred by not severing his case into two trials and that the evidence was insufficient to sustain the jury's findings of guilt on the September 14 counts of conviction. The Commonwealth has raised several procedural bars, and we consider those first.

Beginning with the sufficiency of the evidence, the Commonwealth argues that if this Court finds the transcript from the first day of trial to be indispensable, this assignment of error must be dismissed. Although we find that the transcript from the first day of the trial is indispensable, the failure to file it on time does not deprive this Court of jurisdiction to consider the appeal. *See Smith v. Commonwealth*, 281 Va. 464 (2011) (holding that dismissal is improper for violation of a non-jurisdictional rule); *Jay v. Commonwealth*, 275 Va. 510 (2008) (same). Rather, Sims "waived his challenge" to the sufficiency of the evidence "because he failed to timely file a

- 3 -

transcript necessary to resolve the issue." *Smith*, 281 Va. at 470; *see also* Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered.").[2]

Turning next to the joinder argument, the Commonwealth asserts that Sims's argument is barred by Rule 5A:18 because while he argues on appeal that the offenses were separate incidents, his argument below focused only on the prejudice he would face from having everything tried together. Sims's written motion to sever argued that the "dates of offense are different," the "cases are different," and "[t]hey are not related and trying them together would result in prejudice to the defendant." He also argued that "these are two completely separate incidents, and they should not be tried together." We find that this was sufficient to satisfy Rule 5A:18. The Commonwealth also argues that the joinder issue was mooted by Sims's acquittal on the September 16 charges. Because we cannot discount the possibility that Sims could have been prejudiced by introduction of all the evidence about the September 16 events—even with his acquittal—we proceed to the merits.

We review a circuit court's decision to join offenses for trial for abuse of discretion. At the same time, we review a trial court's interpretation of the Rules *de novo*. *Walker v. Commonwealth*, 289 Va. 410, 415 (2015). Under Rule 3A:10(c), a court "may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." Sims did not consent to joinder of the offenses, so we must consider whether the offenses met the requirements of Rule 3A:6(b) and whether justice required separate trials.

---

[2] Code § 19.2-321.1 outlines the circumstances when a late appeal may be filed where an indispensable transcript was unavailable due to the fault of counsel or the court reporter.

Rule 3A:6(b) states,

> Two or more offenses, any of which may be a felony or
> misdemeanor, may be charged in separate counts of an indictment or
> information if the offenses are based on the same act or transaction,
> or on two or more acts or transactions that are connected or constitute
> parts of a common scheme or plan.

To be "connected" under the Rule, the crimes must be "so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety." *Spence v. Commonwealth*, 12 Va. App. 1040, 1044 (1991). "A reviewing court must look to whether the transactions were 'closely connected in time, place, and means of commission, all of which supports the use of a single trial.'" *Doss v. Commonwealth*, 59 Va. App. 435, 449 (2012) (quoting *Yellardy v. Commonwealth*, 38 Va. App. 19, 24 (2002)). Alternatively, a "common scheme" involves "crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes." *Scott v. Commonwealth*, 274 Va. 636, 645 (2007). And a "common plan" describes crimes related to one another to accomplish a particular goal. *Id.* at 646.

When the trial court considered the motion to sever, the proffered evidence demonstrated that the events were close in time (two days apart), the location was the same, and the means of commission was the same (in both the door was kicked in). The victim was also the same, and the evidence presented to the court was that Ellifritz's reporting of the first incident, and the issuance of warrants to arrest Sims for those offenses, are what caused the second incident.

These similarities distinguish this case from *Cousett v. Commonwealth*, 71 Va. App. 49, 60 (2019), where the defendant was accused of raping two different women, in two different apartments, on the same evening. While the time and place of the incidents were similar, we explained that the Commonwealth had shown no common plan connecting the offenses. *See also Godwin v. Commonwealth*, 6 Va. App. 118, 123 (1988) (no common plan tying together robberies

- 5 -

of two stores, five days and more than three miles apart, though robbers took similar steps in entering the stores and using a firearm). In this case, the trial court did not abuse its discretion in finding the offenses were sufficiently connected considering that the victim was the same and that the first offense provided a motive and rationale for the second offense.

Next, we turn to whether justice required the charges to be tried in separate trials. We have required separate trials "where the evidence of one of the crimes is not admissible in the trial of the other." *Id.* Such evidence "confuses one offense with the other, unfairly surprises the defendant with a charge he is unprepared to meet, and, by showing that the accused has a criminal propensity, tends to reverse his presumption of innocence." *Id.*

Generally, evidence of an accused's other crimes, wrongs, or bad acts is inadmissible if used to establish their propensity to commit the crime for which they are being tried. *Castillo v. Commonwealth*, 70 Va. App. 394, 414 (2019). Other bad acts evidence may be admissible, however, where it is instead used:

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

*Id.* at 415 (quoting *Quinones v. Commonwealth*, 35 Va. App. 634, 640 (2001)).

That Sims was ultimately acquitted of the September 16 charges cannot color our review of the trial court's determination, pretrial, that evidence about what was alleged to have happened on September 16 would have been admissible in a separate trial about the events of September 14.

Such evidence was relevant to show Sims's feelings toward Ellifritz.[3]  Likewise, evidence of the

September 14 incident would have been admissible in a separate trial on the September 16 charges

to prove motive as well as to establish the prior relations between Sims and Ellifritz.[4]  Accordingly,

the trial court did not abuse its discretion in deciding that justice did not require separate trials in this

case.

CONCLUSION

We affirm the trial court's judgment.

*Affirmed*.

---

[3] *See Subsequent Conduct*, 3 Jones on Evidence § 17:91 (7th ed.) ("Although extrinsic act evidence is often referred to as 'prior bad acts' or 'prior crimes' evidence, extrinsic acts that are subsequent to the crime or claim being tried should also be admitted if they have sufficient relevance.").

[4] We also note that to be admissible, the "legitimate probative value" of this evidence "must exceed the incidental prejudice to the defendant." *Rose v. Commonwealth*, 270 Va. 3, 11 (2005).  "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.  The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse." *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990).  While the admission of this evidence in separate trials for each offense date would have been prejudicial to Sims, the evidence was also highly probative for the purposes for which it would have been offered.  We therefore cannot say that the trial court abused its discretion in determining that the probative value of this evidence exceeded the prejudice to Sims.